ENDORSED
FILED
ALAMEDA COUNTY

JUL 3 0 2001

CLERK OF THE SUPERIOR COURT
By R.C. Hughes,

1  JAMES C. STURDEVANT (SBN 94551)
   KAREN L. HINDIN (SBN 172226)
2  THE STURDEVANT LAW FIRM
   475 Sansome Street, Suite 1750
3  San Francisco, CA  94111
   Telephone: (415) 477-2410
4
5  F. PAUL BLAND, JR. (motion for pro hac vice admission pending)
   MICHAEL J. QUIRK (motion for pro hac vice admission pending)
6  TRIAL LAWYERS FOR PUBLIC JUSTICE
   1717 Massachusetts Avenue, NW
7  Suite 800
   Washington, D.C.  20036
8  Telephone:  (202) 797-8600
9  ARTHUR H. BRYANT
   TRIAL LAWYERS FOR PUBLIC JUSTICE
10 One Kaiser Plaza, Suite 275
   Oakland, CA 94612
11 Telephone:  (510) 622-8150

12 Attorneys for Plaintiffs

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                 IN AND FOR ALAMEDA COUNTY

15

16 DARCY TING, individually and on behalf )   Case No. **2001-018260**
   of all others similarly situated, and        )
17 CONSUMER ACTION, a non-profit              )   **CLASS ACTION**
   membership organization, both as private   )
18 attorneys general,                         )   **COMPLAINT FOR VIOLATIONS OF**
                                              )   **THE CONSUMER LEGAL REMEDIES**
19              Plaintiffs,                    )   **ACT, THE UNFAIR BUSINESS**
                                              )   **PRACTICES ACT, AND FOR**
20         vs.                                 )   **DECLARATORY AND INJUNCTIVE**
                                              )   **RELIEF**
21 AT&T, a New York corporation,              )
                                              )   Type of Case:  (Other): Unfair Business
22              Defendant.                     )   Practices
   _____ )
23                                                 JURY TRIAL DEMANDED

24

25                    **INTRODUCTORY STATEMENT**

26      1.      This is a lawsuit charging AT&T with unconscionably and unilaterally attempting to

27 deprive plaintiff Ting and its other customers of their constitutional rights to due process and a jury

28 trial without their consent.  In the last several months, AT&T has sent plaintiff Ting and its other

                                          1

1  customers a "Consumer Services Agreement" that would eliminate their ability to obtain

2  compensation for most wrongs AT&T might commit against them by, among other things, requiring

3  plaintiff Ting and AT&T's other customers to submit to mandatory, binding, secret arbitration and

4  prohibiting them from participating in class actions.

5       2.    AT&T's "Consumer Services Agreement" is unlawful, unfair, fraudulent and

6  unconscionable – and therefore in violation of California's Consumer Legal Remedies Act and the

7  Unfair Competition Law – for several distinct reasons.  First, while the proposed changes contained

8  in the "Consumer Services Agreement" would effectively immunize AT&T from liability for most

9  wrongs it might commit against its customers, AT&T has made no effort to ensure that plaintiffs and

10 its other California customers actually learned of these proposed changes or knowingly consented to

11 them.  Instead, AT&T simply sent the "Consumer Services Agreement" to plaintiff Ting and its other

12 customers with their bills, knowing that most customers were unlikely even to read it, and simply

13 included a provision that any time one of its customers simply used his/her telephone, this would

14 constitute consent to the proposed changes.  Such "consent," however, is neither voluntary nor

15 meaningful under the law, and renders the "Consumer Services Agreement" unenforceable in its

16 entirety.

17      3.    Second, even if plaintiff Ting and AT&T's other customers knowingly consented to

18 AT&T's unilateral attempt to change its contract, the "Consumer Services Agreement" is

19 nonetheless unconscionable and unenforceable because it expressly forbids any AT&T customers

20 from bringing, or participating in, any class actions, an important provision of California's public

21 policy for protecting consumers.  AT&T is well aware that class actions are the only realistic means

22 that plaintiff Ting and AT&T's other customers have for pursuing many if not most claims they are

23 ever likely to have against AT&T.   Thus, if the "Consumer Services Agreement" is enforced, AT&T

24 will be insulated from most liability to its customers and be free to cheat and damage its customers

25 without being held accountable.

26      4.    Finally, AT&T's "Consumer Services Agreement" is unconscionable and

27 unenforceable because it requires class members to submit their claims to an arbitration service

28 provider – the American Arbitration Association ("AAA") – that has strong incentives to be biased

1  in favor of AT&T and against plaintiff Ting and AT&T's other customers.

2      5.      For these and other reasons, this Court should declare that AT&T's provisions

3  requiring customers to submit to mandatory arbitration and prohibiting customers from participating

4  in class actions are unlawful and unfair on their face within the meaning of the Consumer Legal

5  Remedies Act and the Unfair Competition Law, and enjoin their further enforcement.

6                                    **THE PARTIES**

7  **Plaintiffs**

8      6.      Plaintiff Ting is over 18 years of age and is a resident of Berkeley, California.  For at

9  least seven years, Ms. Ting has been an AT&T customer.

10     7.      Plaintiff Consumer Action ("CA") is a non-profit membership organization

11  committed to consumer education and consumer education and advocacy.  CA was established

12  nearly 30 years ago, and has approximately 1,500 members.  CA is headquartered in San Francisco

13  and has members throughout California and nationwide.  As a service to consumers in California and

14  elsewhere, CA publishes and distributes approximately 2,000,000 pieces of literature a year, in 8

15  different languages, on banking and utility issues, including an annual survey on long distance rates.

16  In addition, CA is actively involved in policy and legislative advocacy on telephone and utility

17  issues, among others, on behalf of consumers at both the state and national levels.

18     8.      Plaintiffs are not authorized to enforce observance by defendant AT&T of federal

19  laws and regulations.  Plaintiffs do not seek to control defendant AT&T but merely to obtain a

20  declaration of rights and responsibilities and injunctive relief relying on state law.

21  **Defendant**

22     9.      Defendant AT&T is a long distance telephone carrier and a corporation in New York,

23  New York.  It is, through its officers, agents, and employees, engaged in and sells communication

24  services, including long distance telephone services, and is doing such business in California with

25  offices located in Oakland, California and many other California locations.

26                                **CLASS ALLEGATIONS**

27     10.     Pursuant to California Civil Code § 1781 and California Code of Civil Procedure

28  § 382, plaintiff Ting brings this action on behalf of herself and all other persons similarly situated.

3

1   The class that plaintiff Ting represents (hereinafter the "Plaintiff Class") is composed of all

2   California persons who have or have had long distance telephone service with defendant AT&T at

3   any time from July 30, 1997 forward, and whose long distance service is subject to AT&T's

4   Consumer Services Agreement challenged by this action.

5        11.    Plaintiff Ting is informed and believes and on that basis alleges that the Plaintiff

6   Class numbers in excess of hundreds of thousands of persons and is so numerous that joinder of all

7   members would be impracticable.  The exact size of the Plaintiff Class, and the identity of the

8   members of the class are ascertainable from the business records of AT&T.

9        12.    Questions of law and fact common to the Plaintiff Class exist that predominate over

10  questions affecting only individual members, including, *inter alia,* the following:

11          a.    Whether defendant AT&T's Consumer Services Agreement with members of

12  the Plaintiff Class is unconscionable;

13          b.    Whether the terms of AT&T's Consumer Services Agreement violated the

14  Consumer Legal Remedies Act, Civil Code §§ 1770(a)(5), 1770(a)(9), and 1770(a)(14);

15          c.    Whether AT&T's Consumer Services Agreement is unlawful, unfair and

16  fraudulent in violation of the Unfair Competition Law, Business & Professions Code

17  § 17200, *et seq.*; and

18          d.    Whether plaintiff Ting and the other members of the Plaintiff Class suffered

19  damage by reason of the unlawful, unfair and/or fraudulent conduct of AT&T and the class-

20  wide measure of damages.

21       13.    The claims asserted by plaintiff Ting in this action are typical of the claims of the

22  members of the Plaintiff Class as described above, the claims arise from the same course of conduct

23  by AT&T, and the relief sought is common.

24       14.    Plaintiff Ting will fairly and adequately represent and protect the interests of the

25  members of the Plaintiff Class.  Plaintiff Ting has retained counsel competent and experienced in

26  both consumer protection and class action litigation.

27       15.    A class action is superior to other methods for the fair and efficient adjudication of

28  this controversy, since joinder of all members is impracticable.  Furthermore, because the economic

4

1   damages suffered by the individual class members may be relatively modest, albeit significant,

2   compared to the expense and burden of individual litigation, it would be impracticable for members

3   of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein.  There will

4   be no undue difficulty in the management of this litigation as a class action.

### PRIVATE ATTORNEY GENERAL ALLEGATIONS

6      16.    This action is brought by plaintiffs acting as private attorneys general pursuant to the

7   Unfair Business Practices Act.  A private attorney general action pursuant to Business and

8   Professions Code §§17203 and 17204 is appropriate and necessary because AT&T has engaged in

9   the acts described herein as a general business practice.  Plaintiffs request in this claim that this court

10  decide that the arbitration requirements unilaterally imposed on its customers by AT&T are each

11  unlawful, unfair, deceptive and unenforceable, and enjoin AT&T from unilaterally imposing these

12  requirements on its customers.

### VENUE

14     17.    Venue is appropriate in the County of Alameda pursuant to California Code §1780(c)

15  because defendant is doing business in Oakland.

### GENERAL ALLEGATIONS

17     18.    Plaintiff Ting recently received a document with the heading "Dear AT&T

18  Customer," and entitled "AT&T  Consumer Services Agreement."  This document was included

19  with several other documents in a monthly statement from AT&T.  A copy of the "Consumer

20  Services Agreement" document sent to plaintiff Ting is attached as Exhibit A hereto.

21     19.    The "Consumer Services Agreement" Document contains, in small print, an

22  arbitration provision ("AT&T's Arbitration Provision").  This provision provides that "You have the

23  right to take any qualifying dispute to small claims court rather than arbitration.  All other disputes

24  arising out of or related to this Agreement (whether based in contract, tort, statute, fraud,

25  misrepresentation or any other legal or equitable theory) must be resolved by final and binding

26  arbitration."

27     20.    AT&T's Arbitration Provision further provides:

28          THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH
            FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR

1    INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS
     ACTION.
2

3    (Capitals in original).

4        21.    AT&T's Arbitration Provision further states that "NO DISPUTE MAY BE JOINED

5    WITH ANOTHER LAWSUIT, OR IN AN ARBITRATION WITH A DISPUTE OF ANY OTHER

6    PERSON, OR RESOLVED ON A CLASS-WIDE BASIS." (Capitals in original).

7        22.    AT&T's Arbitration Provision also provides

8            BY ENROLLING IN, USING, OR PAYING FOR THE SERVICES, YOU AGREE
             TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS
9            AGREEMENT.  IF YOU DO NOT AGREE TO THE PRICES, CHARGES, TERMS
             AND CONDITIONS, DO NOT USE THE SERVICES, AND CANCEL THE
10           SERVICES IMMEDIATELY BY CALLING AT&T AT 1(888) 288-4099 FOR
             FURTHER DIRECTIONS .
11

12   (Capitals in original).

13       23.    AT&T's Arbitration Provision incorporates the AAA's Consumer Arbitration Rules

14   (for disputes involving $10,000 or less) or its Commercial Arbitration Rules (for disputes in excess

15   of $10,000).  It does not explain, however, what either of these sets of rules provides.  To obtain a

16   copy of the current version of either set of the AAA rules, a customer must go to either AT&T's or

17   the AAA's website.

18       24.    AT&T's Arbitration Provision also makes clear that both sets of the AAA rules can

19   be unilaterally changed without further notice to or agreement by plaintiff Ting or AT&T's other

20   customers, as the rules that apply are those "which are in effect on the date a dispute is submitted to

21   the AAA.

22       25.    The AAA requires a claimant to pay certain fees to proceed with the claim.  Under the

23   Commercial Arbitration Rules, as the amount of damages claimed by a plaintiff increases, so do

24   these fees increase.

25       26.    AT&T's Arbitration Provision provides that "[t]he prevailing party may, however,

26   seek to recover the AAA's fees and the expenses of the arbitrator from the other party."

27       27.    AT&T's Arbitration Provision states that the decision of the arbitrator will be "final

28   and binding."

6

28.     The Consumer Services Agreement further provides that "We can assign all or part of our rights and duties under this Agreement without notifying you. If we do that, we have no further obligations to you. You may not assign this Agreement or the Services without our prior written consent."

29.     The AT&T Consumer Services Agreement further states that "We [AT&T] may change this Agreement, including the incorporated AT&T Service Guides, from time to time."

30.     The AT&T Consumer Services Agreement further provides that, if AT&T decides to exercise its self-declared right unilaterally to change the agreement, it will notify the consumer of the changes "by one or more of the following: posting on our Website, recorded announcement, bill message, bill insert, newspaper ad, postcard, letter, call to your billed telephone number, or e-mail to an address provided by you." Thus, the agreement provides that it can be unilaterally amended with as little notice as a posting on AT&T's website and with no specified time period for notice.

31.     The Consumer Services Agreement also provides for limitations on the remedies that a customer may have against AT&T:

> IF OUR NEGLIGENCE CAUSES DAMAGE TO PERSON OR PROPERTY, WE WILL BE LIABLE FOR NO MORE THAN THE AMOUNT OF DIRECT DAMAGES TO THE PERSON OR PROPERTY. FOR ANY OTHER CLAIM, WE WILL NOT BE LIABLE FOR MORE THAN THE AMOUNT OF OUR CHARGES FOR THE SERVICES DURING THE AFFECTED PERIOD. . . . WE ALSO WILL NOT BE LIABLE FOR PUNITIVE, RELIANCE OR SPECIAL DAMAGES. THESE LIMITATIONS APPLY EVEN IF THE DAMAGES WERE FORESEEABLE OR WE WERE TOLD THEY WERE POSSIBLE, AND THEY APPLY WHETHER THE CLAIM IS BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL OR EQUITABLE THEORY.

32.     The "Frequently Asked Questions" portion of the cover note transmitted with AT&T's Consumer Service Agreement states that "Arbitration is a quicker and more convenient way to settle disputes without the hassle and cost of a court case."

33.     The "Frequently Asked Questions" portion of the cover note transmitted with AT&T's Consumer Service Agreement states that the arbitrator will be "an objective third party," and the arbitration provision itself refers to "neutral" arbitrators.

/ / /

/ / /

7

## AT&T's ARBITRATION PROVISION PURPORTS TO STRIP
## CONSUMERS OF THEIR SUBSTANTIVE RIGHTS UNDER THE LAW

34.     Under both the Federal Arbitration Act and California law, arbitration clauses are unenforceable unless they permit a claimant effectively to vindicate the substantive rights that they could enforce in court.

35.     Despite this authority, AT&T's Arbitration Provision purports to shorten the limitations period applying to its customers' claims. The provision states that "ANY CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE BROUGHT WITHIN TWO YEARS AFTER THE DATE THE BASIS FOR THE CLAIM OR DISPUTE FIRST ARISES." This is shorter than the three-year limitations provision that applies to most statutory causes of action in California, than the four-year limitations period that applies to claims under the Unfair Competition Law, than the four-year limitations period that applies to written agreements and the three-year limitations period that applies to a cause of action for fraud.

36.     AT&T's Arbitration Provision also provides that "THE ARBITRATOR MAY NOT AWARD DAMAGES THAT ARE NOT EXPRESSLY AUTHORIZED BY THIS AGREEMENT" and that "YOU AND AT&T BOTH WAVE ANY CLAIMS FOR AN AWARD OF DAMAGES THAT ARE EXCLUDED UNDER THIS AGREEMENT." This incorporates into the arbitration provision as an express limitation on the arbitrator's power the section of the AT&T Customer Services Agreement which states that "IF OUR NEGLIGENCE CAUSES DAMAGE TO PERSON OR PROPERTY, WE WILL BE LIABLE FOR NO MORE THAN THE AMOUNT OF DIRECT DAMAGES TO THE PERSON OR PROPERTY. FOR ANY OTHER CLAIM, WE WILL NOT BE LIABLE FOR MORE THAN THE AMOUNT OF OUR CHARGES FOR THE SERVICES DURING THE AFFECTED PERIOD. FOR ALL CLAIMS, WE WILL NOT BE LIABLE FOR INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS OR REVENUE OR INCREASED COSTS OF OPERATION. WE ALSO WILL NOT BE LIABLE FOR PUNITIVE, RELIANCE OR SPECIAL DAMAGES. THESE LIMITATIONS APPLY EVEN IF THE DAMAGES WERE FORESEEABLE OR WE WERE TOLD THEY WERE POSSIBLE, AND THEY APPLY WHETHER THE CLAIM IS BASED ON CONTRACT, TORT,

1   STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL OR EQUITABLE

2   THEORY." The arbitration provision prohibits all punitive damages claims even though Section

3   3294 of the California Civil Code provides for such relief for a variety of types of conduct that

4   AT&T could potentially commit against its customers.

**AT&T'S ARBITRATION PROVISION SEEKS TO
IMMUNIZE AT&T FROM LIABILITY BY PREVENTING
ITS CUSTOMERS FROM PARTICIPATING IN CLASS ACTIONS**

7       37.     As set forth above, AT&T's Arbitration Provision prohibits its customers from

8   proceeding against AT&T on a class action basis. By doing so, AT&T's Arbitration Provision seeks

9   to eliminate the only realistic remedy that its customers have for most wrongs it might commit

10  against them.

11      38.     The recent history of consumer litigation establishes that most individual claims

12  against telecommunications companies are for very modest sums of a few hundred or (at the most) a

13  few thousand dollars.

14      39.     It is not economically feasible for consumers to pursue such relatively small claims on

15  an individual basis against a large corporation such as AT&T. Very few, if any, attorneys are

16  financially able or willing to pursue individual claims for modest sums against large, powerful

17  companies such as AT&T. And when a consumer's claims are quite small on an individual basis, it

18  is economically infeasible for him/her to hire an attorney to represent his/her interests on a billable-

19  hour basis.

20      40.     Consumer attorneys *are*, however, often able to pursue such claims on a class action

21  basis. When similar claims are aggregated, the amount in controversy becomes sufficiently large for

22  consumers to be able to locate counsel who will represent them and defend their interests. Indeed,

23  there have been several cases across the nation in recent years where consumer companies were held

24  accountable for widespread wrongdoing through consumer class actions. As the California Supreme

25  Court recently held, "class actions offer consumers a means of recovery for most individual

26  damages. . . ." *Linder v. Thrift Oil Co.* (2000) 23 Cal. 4th 429, 445.

27      41.     California's public policy demonstrates the importance of class actions as an

28  instrumentality of consumer protection.

9

42.    If AT&T's customers are barred from pursuing class litigation, then they will likely be denied any meaningful remedy for most wrongs that AT&T might commit against them. Accordingly, AT&T's Arbitration Provision does not offer customers an equally effective alternative method of dispute resolution; rather it eliminates the only realistic method of dispute resolution available.

43.    If AT&T successfully immunizes itself from any class-wide legal accountability, it will free itself to commit widespread wrongdoing.  As the California Supreme Court has recognized, class actions "often produce several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, [and] aid to legitimate business enterprises by curtailing illegitimate competition. . . ." *Linder*, *supra*, 23 Cal. 4th at 445 (internal quotation marks and citations omitted).  The Supreme Court went on to state that "defendants should not profit from their wrongdoing simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts." *Id.* at 446 (internal quote, citation omitted).

44.    It is unconscionable for a contract to compel an individual to submit his or her claims to arbitration when the arbitrator cannot provide the same opportunity to effectively vindicate those claims that could have been provided in court.

## AT&T'S ARBITRATION PROVISION REQUIRES ITS CUSTOMERS WITH CLAIMS GREATER THAN $10,000 TO PAY ENORMOUS ARBITRATION FEES

45.    If plaintiff Ting or any of AT&T's customers were to have a dispute with AT&T in which he/she claim damages of more than $10,000, under AT&T's Arbitration Provision he/she would be required to arbitrate this dispute under AAA's Commercial Rules.

46.    Under the AAA's Commercial Rules, the minimum filing fee for a claimant is $500, and filing fees then quickly escalate as the amount of the claim increases.  A claimant must also pay one half of the fees of the arbitrator(s) handling the case.  AAA arbitrators frequently charge fees of $300 to $400 per hour and more for each hour spent on the matter, including research and preparation.

47.    The total fees billed by AAA for arbitrations conducted under its commercial rules are often very high:

10

a. In one sexual harassment case brought in California captioned *Warner v. Von Buettner Ristow*, a claimant was required to pay $18,260 to AAA. When she did not prevail on the claim, the AAA Arbitrator assessed the claimant $207,271 for the defendant employer's attorneys' fees.

b. In a legal malpractice case bought in California captioned *Paul v. Alred*, a claimant was required to pay $15,000 to AAA, even though she waited for more than four years for the arbitrator even to hold a hearing on the merits of her claim.

c. In a dispute between a small chicken farmer and a large agribusiness brought in Mississippi captioned *Gatlin v. Sanderson Farms*, AAA informed the farmer that he would be required to pay a minimum of $11,000 to have his claim heard.

d. In a personal injury case brought in Connecticut captioned *Mahler v. Terminex*, two homeowners were charged $7,000 each to arbitrate their claims.

48. As a result of such high AAA arbitration fees, many consumers are unable to pursue their claims against corporations such as AT&T.

**AT&T'S ARBITRATION PROVISION REQUIRES ITS CUSTOMERS TO SUBMIT TO ARBITRATION WITH A PROVIDER (THE AAA) THAT IS BIASED IN FAVOR OF CORPORATE DEFENDANTS SUCH AS AT&T**

49. Plaintiff Ting and all of AT&T's customers are entitled by law to have any legal disputes that they may have with AT&T resolved according to law by a genuinely unbiased, neutral, independent decision maker.

50. AT&T's Arbitration Provision is unfair and unconscionable because AT&T has chosen an arbitrator – the AAA – with very strong incentives to be biased in its favor. AAA is very sympathetic to and favorable towards corporate defendants.

51. AAA's arbitrators know that there are numerous other providers of arbitration services, and AAA's development staff directly competes for corporate business with other providers such JAMS and the National Arbitration Forum. All or nearly all of the business for AAA's for-profit arbitrators comes from having corporations designate AAA as the arbitration service provider for the corporations' customers in their standard form contracts. AAA has a development team that focuses upon convincing corporations to select it as the corporations' arbitration service providers.

11

52.    AAA's arbitrators know that if they were to rule for consumers too often by the standards of the corporations selecting them or their defense lawyers, or enter awards for consumers that were too large by the standards of these corporations and their defense lawyers, these companies would cancel or not renew their contracts with the AAA, and the arbitrators would lose this lucrative business.

53.    In addition to the filing fees that AAA receives when cases are lodged with it, and the arbitrators' fees that its arbitrators receive for handling particular cases, AAA also receives regular and substantial cash stipends, retainers, or payments from a large number of corporations.

54.    AAA regularly files *amicus* briefs with courts that support the efforts of corporate defendants to force individuals to submit their claims to arbitration. In a series of cases before the U.S. Supreme Court and other courts, AAA has filed supposedly "neutral" *amicus* briefs that were purportedly in support of neither party. In each of these cases, a corporate defendant was attempting to compel an individual claimant to arbitrate his or her claims, and the individual claimant was seeking to pursue his or her constitutional right to have his or her day in court and right to a trial by jury. In each case, despite AAA's claims of neutrality, AAA's *amicus* brief set forth legal and/or factual arguments in support of compelling arbitration in these cases, which was the ultimate position sought by the corporate defendant and opposed by the individual plaintiff. After AAA filed an ostensibly neutral brief with the Supreme Court in a recent case involving employment disputes, one AAA arbitrator wrote AAA that "Taking the strong position the Association took in this brief, where half of its clients in the employment arena – claimants – take the opposing position, is not only unseemly, but destroys AAA's hard earned neutrality." Michael Joe, *Embattled Brief: AAA Faces Criticism from Two of Its Own for Weighing In On a Mandatory ADR Case*, The Recorder, September 27, 2000 (quoting Oakland arbitrator R. Elaine Leitner).

55.    AAA also sometimes assists corporations in their efforts to pitch their mandatory arbitration clauses to individual consumers and/or employees. In a case involving Red Lobster Restaurants, for example, a man identified as Bruce Chapin, an AAA arbitrator, appeared in a corporate-produced video tape aimed at convincing employees to accept Red Lobster's new mandatory arbitration policy. When an employee (or an actor pretending to be an employee) asks

about the right to a jury trial, Mr. Chapin states: "Certainly anyone who is ever charged with a crime should insist upon a jury trial.  But in a civil setting, a dispute in the workplace, for instance, this is not a matter that would be best tried in front of a jury."  Thus, AAA is so eager to help corporate clients impose mandatory pre-dispute arbitration upon individuals that its representatives will urge those individuals to conclude that it is "best" for them to waive their constitutional rights.

56.     In a number of cases with mandatory pre-dispute arbitration clauses specifying AAA as the arbitration service provider, individual claimants have initiated the arbitration process against corporations only to have AAA select an arbitrator who was in the same business as the corporate defendant or who represented other corporations in that business, or to identify a list of potential arbitrators primarily or solely composed of such individuals.

57.     Plaintiffs are informed and believe that AAA's arbitrators are overwhelmingly and disproportionately drawn from the ranks of attorneys who principally represent corporations in defending actions brought by individuals.

58.     AAA places such an emphasis on developing new lucrative corporate business that in its San Francisco office Paul Loon, the Regional Vice President of AAA, on January 14, 2000, sent a memorandum to all AAA arbitrators in that area asking for the arbitrators' help, as "[part of our marketing effort for 2000 will be to develop business contracts with corporations headquartered in Northern California."  He asked the arbitrators to "make the introduction for us" to any contacts they might have with any corporation listed on an attachment to the memo.  This memorandum was circulated despite the fact that AAA's Code of Ethics for Arbitrators in Commercial Disputes states, Canon I at B, that "[i]t is inconsistent with the integrity of the arbitration process for persons to solicit appointment for themselves."

59.     AAA represents that individuals forced to arbitrate their claims before it will have their rights protected by its Consumer Due Process Protocol, a set of rules that AAA asserts will protect the rights of consumers required to take part in mandatory arbitration.  In fact, despite its representations to the contrary, AAA regularly administers arbitrations or otherwise endorses the validity of mandatory pre-dispute arbitration clauses that do not comply with its Due Process Protocol.  In at least one case, AAA refused to even respond to correspondence from individuals

1  facing a motion to compel arbitration (or to correspondence from state and elected officials writing

2  on the individuals' behalf) that requested that AAA state that it would not administer arbitration

3  pursuant to an arbitration clause that did not comply with AAA's Consumer Due Process Protocol.

4  In February of 2000, one AAA representative publicly announced that AAA had never yet refused to

5  administer arbitration under an arbitration clause on the grounds that it did not comply with its Due

6  Process Protocol.

**AT&T'S ARBITRATION PROVISION WAS COMMUNICATED
TO CONSUMERS IN SUCH A WAY THAT FEW OF ITS
CONSUMERS WOULD VOLUNTARILY, KNOWINGLY AND
INTELLIGENTLY CONSENT TO THE ARBITRATION PROVISION**

10  60.   AT&T's Arbitration Provision was communicated to plaintiff Ting and AT&T's other

11  customers in such a way that ensures that few would have read it, much less have voluntarily,

12  knowingly, and intelligently consented to it.

13  61.   AT&T did not send its Arbitration Provision to plaintiff Ting or to its other customers

14  in a document that they must read, sign and return.

15  62.   AT&T's prior version of its Customer Agreement does not refer specifically to dispute

16  resolution.

17  63.   No AT&T employee telephoned or contacted plaintiff Ting to inform her about its

18  Arbitration Provision or to notify her that she would be losing her federal and state constitutional

19  rights to trial by judge or jury.

20  64.   Upon information and belief, no AT&T employee telephoned or contacted any of

21  AT&T's other customers to inform them about its Arbitration Provision or to notify them that they

22  would be losing their federal and state constitutional right to trial by judge or jury.

23  65.   In short, AT&T did not use any method or marketing device that would insure that

24  plaintiff Ting or its other customers would actually read and understand the AT&T Arbitration

25  Provision.

26  66.   Major telecommunications companies such as AT&T are extremely sophisticated

27  with respect to marketing, and with respect to consumer behavior in response to communications

28  from financial services companies.  Like other companies in the telecommunications industry,

1   AT&T retains and employs a number of persons who study the number of consumers who read and

2   respond to various sorts of mailings.

3       67.   The California Constitution recognizes that the right to jury trial is a fundamental

4   right for all citizens of California protected by Cal. Const. art. I, § 16.  In addition, the Seventh

5   Amendment to the United States Constitution recognizes the right to a jury trial in all federal cases.

6   The California Constitution and the Fifth and Fourteenth Amendments to the United States

7   Constitution protect the right of all citizens to Due Process of law.

8       68.   AT&T's Arbitration Provision deprives its customers of these constitutional rights.

9       69.   Under California's generally applicable law of contracts, an individual will not be

10  found to have waived a constitutional right (such as the rights to due process and a jury trial) by

11  contract unless they have voluntarily, knowingly, and intelligently consented to waive those rights.

12      70.   If an individual does not both actually read and fully comprehend a contractual

13  document purporting to waive her or his constitutional rights, that individual cannot be said to have

14  voluntarily, knowingly and intelligently consented to waive those rights.

15      71.   It is therefore unlawful, unfair, fraudulent and unconscionable for AT&T to seek to

16  force its customers into mandatory pre-dispute arbitration without a knowing, voluntary and

17  intelligent waiver of their right to a day in court.

18  **AT&T'S ARBITRATION PROVISION ENSHRINES SWEEPING SECRECY**

19      72.   AT&T's Arbitration Provision compels plaintiff Ting and all of AT&T's customers to

20  submit to an entirely secretive system of dispute resolution, and deprives plaintiff and the other

21  customers of their right to public, open, reviewable dispute resolution.  It provides that "Any

22  arbitration shall remain confidential.  Neither you nor AT&T may disclose the existence, content, or

23  results of any arbitration or award, except as may be required by law, or to confirm and enforce an

24  award."

25      73.   As a result of the secrecy enshrined in AT&T's Arbitration Provision, AT&T has the

26  ability to conceal not only the truth about AAA's performance, but even its mere existence,

27  eliminating any realistic check against any abuses that AAA arbitrators might commit.  AAA could

28  rule for AT&T in *every single* case it arbitrates (and thus give AT&T a strong incentive to continue

1 to patronize AAA), and this fact would forever remain "confidential" from AT&T's customers and

2 the public at large. The extraordinary secrecy enshrined in AAA's rules permits AT&T and AAA to

3 exercise unchecked discretion.

4     74.    The secrecy provisions of AT&T's Arbitration Provision also remove the resolution

5 of disputes from the public domain, and deprive consumers of the benefit of discovering precedents

6 in cases decided in their favor.

7 **FIRST CAUSE OF ACTION FOR INJUNCTIVE RELIEF AND DAMAGES**

8 (Violation of Consumer Legal Remedies Act, California Civil Code §§1750 *et seq.*,
Brought by the Individual Plaintiff)

9

10     75.    Plaintiff Ting realleges and incorporates herein as though set forth in full, the

11 allegations of paragraphs 1 through 74 above, except paragraph 15.

12     76.    Plaintiff Ting brings this action seeking injunctive relief pursuant to California Civil

13 Code §§ 1770 and 1780. The Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.* is

14 designed to protect consumers against unfair and deceptive business practices. It applies to AT&T's

15 conduct because it covers transactions which are intended to result or which result in the sale or lease

16 of goods and services to consumers. The Act specifically proscribes in § 1770(n) representing that a

17 transaction confers or involves rights, remedies, or obligations which it does not have or involve or

18 which are prohibited by law, and prohibits in § 1770(s) inserting an unconscionable provision in a

19 contract.

20     77.    AT&T possesses bargaining strength and power far superior to that of plaintiff Ting

21 and its other customers. Without discussion or negotiation, it offers to its customers standardized

22 form contracts, drafted by AT&T, which are contracts of adhesion because they are offered on a

23 take-it-or-leave-it basis and the customer has the opportunity only to adhere to the contract or close

24 his or her account. Many of its customer agreements with customers were entered into years ago.

25     78.    The AT&T Arbitration Provision is substantially one-sided in favor of AT&T, and

26 AT&T knows that the Arbitration Provision is substantially one-sided in its favor.

27     79.    The AT&T Arbitration Provision does not fall within the reasonable expectations of

28 plaintiff Ting or of AT&T's other customers, and is unduly oppressive. It is, therefore, unlawful,

1   unfair, fraudulent and unconscionable.

2        80.    AT&T's Arbitration Provision would unlawfully, unfairly, fraudulently and

3   unconscionably deprive plaintiff Ting and all of AT&T's other customers of their state and federal

4   constitutional rights to trial by judge and jury without their voluntary, knowing and intelligent

5   consent.

6        81.    AT&T's Arbitration Provision also unlawfully, unfairly, fraudulently and

7   unconscionably deprives plaintiff Ting and AT&T's other customers of their constitutional right to .

8   Due Process of law by denying them any effective remedy for their legal claims without their

9   voluntary, knowing and intelligent consent.

10        82.    AT&T's Arbitration Provision unlawfully, unfairly, fraudulently and unconscionably

11   bars plaintiff Ting and its other Customers from participating in class actions.

12        83.    AT&T's Arbitration Provision unlawfully, unfairly, fraudulently and unconscionably

13   requires plaintiff Ting and AT&T's other customers to submit to arbitration before AAA, which has

14   strong incentives to be biased in favor of AT&T and against its customers, and who has created, at

15   the least, a strong appearance of improper bias in favor of AT&T and against its consumers.

16        84.    AT&T's Arbitration Provision unlawfully, unfairly, fraudulently and unconscionably

17   deprives plaintiff Ting and AT&T's other customers of their right to (and of the benefits of) a public

18   forum for the resolution of their legal claims.

19        85.    The statements in the Consumer Service Agreement about arbitration being cheaper

20   and more convenient than litigation in court are fraudulent and misleading, in that (a) being forced to

21   pay filing fees and individually pursue arbitration is certainly more of a "hassle" and involved greater

22   costs than being a member of a class in a class action; and (b) for AT&T consumers subject to

23   AAA's Commercial Rules, the arbitral and administrative filing fees and arbitrators' hourly fees will

24   dwarf the filing fees that would be required in any court action.

25        86.    The statements in the Consumer Service Agreement referring to "objective"

26   arbitrators are deceptive in light of the facts set forth above with respect to AAA's conduct, and none

27   of those facts are disclosed in the Consumer Service Agreement.

28   / / /

87.     Pursuant to California Civil Code §§ 1770 and 1780, plaintiffs are entitled to enjoin implementation of AT&T's Arbitration Provision and to recover their reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION FOR INJUNCTIVE RELIEF AND RESTITUTION

(Violation of the Unfair Competition Law, California Business and Professions
Code §§ 17200, *et seq.*, Brought by All Plaintiffs)

88.     Plaintiffs reallege and incorporate herein by this reference each and every allegation set forth in paragraphs 1 through 87 above, except paragraph 15.

89.     Plaintiffs file this Second Cause of Action acting as private attorneys general to challenge AT&T's requirement that its customers resolve disputes through arbitration. The Unfair Trade Practices Act defines unfair competition to include any "unlawful," "unfair" or "fraudulent" business act or practice. Business and Professions Code § 17200. The Act authorizes injunctive relief and restitution for violations. *Id.* at § 17203. Defendant AT&T has imposed its Arbitration Provision as a business practice. Plaintiffs request that this Court enjoin this practice as unlawful, unfair and fraudulent.

90.     The imposition of AT&T's Arbitration Provision is an unlawful, unfair and fraudulent business practice for all of the reasons set forth in the preceding cause of action as to why it violates the Consumer Legal Remedies Act.

## THIRD CAUSE OF ACTION

(Declaratory Relief, Brought by the All Plaintiffs)

91.     Plaintiffs reallege and incorporate herein as though set forth in full the allegations of paragraphs 1 through 90 above, except paragraph 15.

92.     An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that plaintiffs contend that the defendant's Arbitration Provision is unlawful, unfair, fraudulent, unenforceable, void and of no force or effect in all respects, whereas defendant contends that its Arbitration Provision is valid, creates binding contracts, and is enforceable in all respects. Plaintiffs maintain that each such notice is unlawful, unfair, fraudulent and unenforceable in that it is unconscionable, deceptive and misleading in violation of the Consumer Legal Remedies Act,

18

violates the Unfair Competition Law, Business and Professions Code §17200, *et seq.*, does not create a binding contract, infringes on protections guaranteed by the California Constitution and applicable statutes, and is oppressive and unfair. Defendant disputes these contentions and asserts that each notice of change of terms is valid, contractually binding, and enforceable.

93.    Plaintiffs desire a declaration as to the validity and enforceability of the Arbitration Provision and whether defendant AT&T's unilateral attempt to impose it is unlawful, unfair or fraudulent. A judicial declaration is necessary and appropriate at this time so that plaintiffs may ascertain their rights and duties, and those of other affected persons in regard to the resolution of disputes with defendant Bank of America.

WHEREFORE, plaintiffs pray:

1.    That this Court declare that AT&T's practice of imposing its Arbitration Provision on its customers violates the Consumer Legal Remedies Act;

2.    That this Court declare AT&T's practice of imposing its Arbitration Provision on its consumers violates the Unfair Competition Law.

3.    That this Court preliminarily and permanently enjoin AT&T from unilaterally imposing its Arbitration Provision on plaintiff Ting and all other customers;

4.    That plaintiffs be awarded reasonable attorney's fees and costs of suit; and

5.    That plaintiffs be awarded such other and further relief as the Court may deem appropriate, just and proper.

Dated: July 30, 2001                    Respectfully submitted,

THE STURDEVANT LAW FIRM, P.C.

TRIAL LAWYERS FOR PUBLIC JUSTICE, P.C.

By: _____
James C. Sturdevant

F:\390\2001c\P-complaint.wpd

19

**EXHIBIT A**

# AT&T Consumer Services Agreement

**THANK YOU FOR USING AT&T SERVICES.** In this Agreement, "Agreement"), "you" and "your" mean the customer of the AT&T Service defined below; and "AT&T," "we," "our," and "us" mean AT&T Corp., Alascom, Inc. and any AT&T affiliates authorized to provide you with AT&T services.

BY ENROLLING IN, USING, OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT. IF YOU DO NOT AGREE TO THESE PRICES, CHARGES, TERMS AND CONDITIONS, DO NOT USE THE SERVICES, AND CANCEL THE SERVICES IMMEDIATELY BY CALLING AT&T AT 1 888 288-4099 FOR FURTHER DIRECTIONS.

"Service" or "Services" mean: (1) the AT&T state-to-state and international consumer telecommunications services you are enrolled in, use, or pay for that AT&T provided to you under tariffs filed with the Federal Communications Commission as of July 31, 2001; and (2) any new or additional AT&T state-to-state and international consumer telecommunications services that you enroll in, use, or pay for, after July 31, 2001.

This Agreement does not cover AT&T local services, AT&T in-state long distance services, calls made by dialing 10-10-345, AT&T Wireless Services, AT&T Internet services, and AT&T video services. The Services covered in this Agreement are subject to billing availability and may not be available at all locations.

"AT&T Service Guides" contain the specific prices and charges, service descriptions and other terms and conditions not set forth here that apply to each of your Services. You can review the AT&T Service Guides on our Web site at www.att.com/serviceguide/home or request a copy of the AT&T Service Guides for the Services you are enrolled in, by calling AT&T toll free at 1 888 288-4099* THIS AGREEMENT INCORPORATES BY REFERENCE THE PRICES, CHARGES, TERMS AND CONDITIONS CONTAINED IN THE AT&T SERVICE GUIDES.

## I. CHARGES AND PAYMENT

**a. General.** You agree to pay us for the Services at the prices and charges listed in the AT&T Service Guides. The prices and charges for any particular Service may depend on a number of factors listed in the AT&T Service Guides, which include, for example, the duration of a call, the time of day and day of week, the distance called, and the type of service. Service types include, for example, direct-dialed from home, operator-assisted, or calling card calls. The prices and charges for the Services may include, for example, monthly fees, monthly minimums, or connection charges.

**b. Price Changes.** We may change the prices and charges for the Services from time to time. We may decrease prices without providing advance notice. Increases to prices or charges for the Services are effective no sooner than fifteen days after we post them on our Web site at a www.att.com/serviceguide/home. Increases to charges that recover our costs associated with government programs are effective no sooner than three days after we post the increases on our Web site (excluding taxes and surcharges under Section 1.e.) We will provide further notices of increases to prices and charges as follows: For the AT&T Service covering direct-dialed calls from home under the state-to-state basic schedule and the state-to-state and international calling plans, we will (1) notify you of these increases by bill message or other notice; and (2) make available in advance recorded announcements of these price increases. These recordings can be obtained by calling AT&T toll free at 1 888 288-4099, 24 hours a day, seven days a week, and will be updated on the first and fifteenth day of each month.

For the following types of calls, we will provide you the prices and charges if you request this information at the time you make a call (or at the time you receive a collect call): AT&T Calling Card calls, AT&T collect calls, AT&T person-to-person calls, calls made with a commercial credit card or local

---

We must first attempt to resolve it, by contacting you. If the dispute cannot be satisfactorily resolved within sixty days from the date your AT&T is notified by the other of a dispute, then either may then contact the other at AAA's listing at AAA's Road, Suite 1750, Dallas, Texas 75240-6620 and request arbitration of the dispute. Information about the arbitration process and the AAA's Arbitration Rules and its fees are available from the AAA on the Internet at www.adr.org or by contacting us at www.att.com/serviceguide/home or AT&T, P.O. Box 944070, Maitland, Florida 32794-4078. The arbitration will be based only on the written submissions of the parties and the documents submitted to the arbitrator unless within twenty days of the party requests that the arbitration be conducted using the AAA's telephonic, online, or in-person procedures. Additional charges may apply for these procedures. Any in-person arbitration will be conducted at a location that the AAA selects in the state of your primary residence. Any arbitration shall remain confidential. Neither you nor AT&T may disclose the existence, content, or results of any arbitration award, except as may be required by law, or to enforce or enforce an award.

**"CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE BROUGHT WITHIN TWO YEARS AFTER THE DATE BASIS FOR THE CLAIM OR DISPUTE FIRST ARISES.**

**Fees and Expenses of Arbitration.** You must pay the applicable AAA filing fee when you submit your written request for arbitration to the AAA. The AAA's filing fee and administrative expenses for a document arbitration will be allocated according to the AAA's Rules, except for claims of less than $1,000, you will only be obligated to pay a filing fee of $20 and we will pay all of the AAA's other costs and fees. If you elect an arbitration process other than a document (or "desk") arbitration, you must pay your allocated share of any higher administrative fees and costs for the process you select. Unless applicable substantive law provides otherwise, each party will pay its own expenses to participate in the arbitration, including attorney's fees and the expenses for witnesses, document production, and presentation of evidence. The prevailing party may, however, seek to recover the AAA's filing fee and the expenses of the arbitrator from the other party.

**7. No Third Party Rights.** This Agreement does not provide any third party a remedy, claim, or right of reimbursement.

**Acts Beyond Our Control.** Neither we nor will we be liable to the other for any delay, failure in performance, loss or damage due to fire, explosion, power blackout, earthquake, volcanic action, flood, the weather elements, strike, embargo, labor disputes, civil or military authority, war, acts of God, acts or omissions of carriers or suppliers, acts of regulatory or governmental agencies, or other causes beyond our reasonable control, except that you must pay for any services used.

**Assignment.** We can assign all or part of our rights or duties under this Agreement without notifying you. If we do that we have no further obligations to you. You may not assign this Agreement or the Services without our prior written consent.

**d. Notices.** Notices from you to AT&T must be provided as specified in this Agreement. Notices from us to you will be provided by one or more of the following: posting on our Web site, recorded announcement, bill message, bill insert, newspaper ad, postcard, letter, call to your telephone number, or e-mail to an address provided by you.

AT&T's notice to you under this Agreement will be provided by one or more of the following: posting on our Web site, recorded announcement, bill message, bill insert, newspaper ad, postcard, letter, call to your telephone number, or e-mail to an address provided by you.

---

**e. Separability.** If any part of this Agreement is found invalid, the rest of the Agreement will remain valid and enforceable.

**f. Governing Law.** This Agreement will be governed by the law of the State of New York, without regard to its choice of law rules, except that the arbitration provisions in Section 7 will be governed by the Federal Arbitration Act. This governing law provision applies no matter where you reside, or where you use or pay for the Services.

**g. Entire Agreement.** This Agreement (which incorporates by reference the AT&T Service Guides) constitutes the entire agreement between us and supersedes all prior agreements, understandings, statements or proposals, and representations, whether written or oral. This Agreement can be amended only as provided in Section 9 below. No written or oral statement, advertisement, or service description not expressly contained in this Agreement will be allowed to contradict, explain, or supplement it. Neither you nor AT&T is relying on any representations or statements by the other party or any other person that are not included in this Agreement.

## 9. CHANGES TO THIS AGREEMENT.

This Agreement may only be changed in the manner provided for in this Section 9.

We may change this Agreement, including the incorporated AT&T Service Guides, from time to time. If we make any changes to the prices or charges, we will comply with our notice commitments described in Section 1 of this Agreement. With respect to all other changes to this Agreement, we will notify you of the changes, and they will be effective no sooner than fifteen days after we post them at www.att.com/serviceguide/home. You may also request a copy of the revised Agreement, including revised AT&T Service Guides for the Services you are enrolled in, by calling AT&T toll free at 1 888 288-4099.

IF YOU CONTINUE TO BE ENROLLED IN, USE, OR PAY FOR THE SERVICES AFTER ANY CHANGES ARE MADE, YOU ACCEPT AND AGREE TO THE CHANGES.

## 10. ENROLLMENT IN ANOTHER AT&T SERVICE.

To enroll in an additional Service, or to switch from your existing Service to a different Service, you must notify us by: (1) returning an enrollment form provided in AT&T marketing materials; (2) calling the AT&T customer service number on your AT&T bill; (3) calling the AT&T customer number provided in AT&T marketing materials; or (4) going to our Web site at www.att.com and following any further instructions provided for enrollment. The terms and conditions of AT&T Service Guides, will apply to the new or additional AT&T Service.

BY ENROLLING IN, USING, OR PAYING FOR THESE NEW OR ADDITIONAL SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT.

*Customers outside the U.S. call: 1 877 288-4725.
TTY for customers with hearing/speech disabilities: 1 800 833-3232.



© 2001 AT&T. All Rights Reserved. ♻ Printed on recycled paper.

BO338

phone company calling card; calls billed to a third party; and other types of operator-assisted calls.

**a. Payments.** You must pay all bills or invoices on time (on or before the due date) and in U.S. money. We do not waive our right to collect the full amount due if you pay late or pay part of the bill, even if you write the words "Paid in Full" (or similar words) on any correspondence to us.

If you make any late payments, and we bill you for the Services, we will charge you if any of your outstanding charges that remain unpaid at the time of the next bill. If the state law where you receive the Services requires a different rate, we will apply that rate. If a local telephone company or other entity bills you for the Services on our behalf, that company's late payment charges and policies will apply.

Your check, bank draft, or electronic funds transfer is returned for insufficient funds, and we bill you for the Services, we will charge you an additional $15. If the state law where you receive the Services requires a different fee, we will charge you that amount. If a local telephone company or other entity bills you for the Services on our behalf, that company's returned check charge and policy will apply. When payment is made by credit card issuer.

You are responsible for preventing the unauthorized use of the Services, and you are responsible for payment for any such unauthorized use.

**b. Charges and Billing.** Charges accrue through a full billing period. We prorate or adjust a bill if the billing period covers less than or more than a full month (for this purpose, each month is considered to have 30 days). To determine the charge for each call, we will round up to the next full minute for any fraction of minutes used. We will determine the format of the bill and the billing period, and we may charge both the bill format and the billing period from time to time.

You are responsible for preventing the unauthorized use of the Services, and you are responsible for payment for any such unauthorized use.

**c. Taxes and Other Charges.** You must pay all taxes, fees, surcharges, and other charges that we bill you for the Services, unless you can show documentation satisfactory to us that you are exempt. Taxes and surcharges will be in the amounts that federal, state, and local authorities require us to bill you. We will not provide advance notice of charges, taxes and surcharges, except as required by applicable law.

**d. Credit Check and Deposits.** You give us permission to obtain your credit information from consumer credit reporting agencies at any time. We bill you for the Services and we determine that you may be a credit risk for (1) unsatisfactory credit rating; (2) insufficient credit history; (3) silent or abusive use of AT&T services within the last five years; or (4) payments for current or prior bills, we may require a deposit (or an advance payment is permitted by state law) to ensure payment for the Services. The amount of the deposit will be no more than your estimated average per-minute charges and/or monthly fees for the Services. We will pay simple interest at the annual rate of 4% on the deposit, subject to the state law where you receive the Services. If you fail to pay for the Services when due, we may use the deposit without giving notice to you. If we pay undisputed bills by the due date for twelve consecutive billing months, we will credit the deposit to your account. If a credit balance remains on your account, we will refund or credit that amount.

**e. Credit Limits.** If we bill you for the Services, we may set a credit limit based on your payment history or your credit score from consumer credit reporting agencies. If we do this, we will notify you of your initial credit limit and all charges to your credit limit. If you exceed your credit limit, we will restrict your access to the Services, including direct-dialed, operator-assisted services, and calls requiring a 900 or 976 prefix. Access to emergency services (9-1-1) will not be affected by this restriction. If you fail to make timely payments, we may also lower your credit limit.

## 2. SUSPENDING AND CANCELING THE SERVICES.

**a. Your Cancellation of the Services.** If you use more than one Service, you may change or cancel individual Services by calling the AT&T customer service number or your AT&T bill, subject to the applicable terms and conditions in the AT&T Service Guides. This Agreement remains in effect for any Services that you continue to be enrolled in, use, or pay for. If you want to cancel all of the Services, discontinue your use of all the Services, and call us toll free at 1 888 288-4099 for further instructions.

**b. Fraudulent Use.** You will not use the Services for any unlawful, abusive or fraudulent purpose, including for example, using the Services in a way that (1) interferes with our ability to provide Services to you or other customers; or (2) avoids your obligation to pay for the Services. If AT&T has reason to believe that you or someone else is abusing the Services or using them fraudulently or unlawfully, we can immediately suspend, restrict, or cancel the Services without advance notice.

**c. Failure to Pay.** Upon advance notice, we may suspend, restrict, or cancel the Services and this Agreement, if you do not make payments for current or prior bills by the required due date, including payments for late fees or any other required additional charges.

**d. Other.** AT&T may from time to time discontinue certain Services, subject to applicable law and regulation.

**e. Outstanding Charges.** If Services are suspended, restricted, or cancelled, any charges will accrue through the date that AT&T fully processes the suspension, restriction or cancellation. You must pay all outstanding charges for these Services including payment of any bills that remain due after the date of cancellation. Subject to Section 7, you must reimburse us for any reasonable costs we incur including attorneys' fees, to collect charges owed to us. If you want us to renew the Services, we may require that you pay a deposit.

## 3. INDEMNIFICATION.

YOU AGREE THAT WE SHOULD NOT BE RESPONSIBLE FOR ANY THIRD-PARTY CLAIMS AGAINST US THAT ARISE FROM YOUR USE OF THE SERVICES. FURTHER, YOU AGREE TO REIMBURSE US FOR ALL COSTS AND EXPENSES RELATED TO THE DEFENSE OF ANY SUCH CLAIMS, INCLUDING ATTORNEYS' FEES, UNLESS SUCH CLAIMS ARE BASED ON OUR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. THIS PROVISION WILL CONTINUE TO APPLY AFTER THE AGREEMENT ENDS.

## 4. LIMITATIONS OF LIABILITY.

THIS SECTION DESCRIBES THE FULL EXTENT OF OUR RESPONSIBILITY FOR ANY CLAIMS YOU HAVE FOR DAMAGES CAUSED BY THE FAILURE OF THE SERVICES, OR ANY OTHER CLAIMS IN CONNECTION WITH THE SERVICES OR THIS AGREEMENT.

IF OUR NEGLIGENCE CAUSES DAMAGE TO PERSON OR PROPERTY, WE WILL BE LIABLE FOR NO MORE THAN THE AMOUNT OF DIRECT DAMAGES TO THE PERSON OR PROPERTY. FOR ANY OTHER CLAIM, WE WILL NOT BE LIABLE FOR MORE THAN THE AMOUNT OF OUR CHARGES FOR THE SERVICES DURING THE AFFECTED PERIOD. FOR ALL CLAIMS, WE WILL NOT BE LIABLE FOR INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, LOST PROFITS OR REVENUE OR INCREASED COSTS OF OPERATION. WE ALSO WILL NOT BE LIABLE FOR PUNITIVE, RELIANCE OR SPECIAL DAMAGES. THESE LIMITATIONS APPLY EVEN IF THE DAMAGES WERE FORESEEABLE OR WE WERE TOLD THEY WERE POSSIBLE, AND THEY APPLY WHETHER THE CLAIM IS BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY.

WE WILL NOT BE LIABLE FOR ANY DAMAGES IF SERVICES ARE INTERRUPTED, OR THERE IS A PROBLEM WITH THE INTERCONNECTION ON OUR SERVICES WITH THE SERVICES OR EQUIPMENT OF SOME OTHER PARTY. THIS SECTION WILL CONTINUE TO APPLY AFTER THE AGREEMENT ENDS.

## 5. WARRANTIES.

EXCEPT AS THIS AGREEMENT EXPRESSLY STATES, WE MAKE NO EXPRESS WARRANTY REGARDING THE SERVICES AND DISCLAIM ANY IMPLIED WARRANTY, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WE ALSO MAKE NO WARRANTY THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE. WE DO NOT AUTHORIZE ANYONE, INCLUDING, BUT NOT LIMITED TO, AT&T EMPLOYEES, AGENTS, OR REPRESENTATIVES, TO MAKE A WARRANTY OF ANY KIND ON OUR BEHALF AND YOU SHOULD NOT RELY ON ANY SUCH STATEMENT.

## 6. CREDIT ALLOWANCES FOR INTERRUPTIONS.

If an interruption or failure of Services is caused solely by AT&T and not by you or a third party or other causes beyond our reasonable control, you may be entitled to a credit allowance as specified in the applicable AT&T Service Guide.

## 7. DISPUTE RESOLUTION.

IT IS IMPORTANT THAT YOU READ THIS ENTIRE SECTION CAREFULLY. THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION. YOU CONTINUE TO HAVE CERTAIN RIGHTS TO OBTAIN RELIEF FROM A FEDERAL OR STATE REGULATORY AGENCY.

**a. Binding Arbitration.** The arbitration process established by this section is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. You have the right to take any dispute that qualifies to small claims court rather than arbitration. All other disputes arising out of or related to this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal or equitable theory) must be resolved by final and binding arbitration. This includes any dispute based on any product, service, or advertising having a connection with this Agreement and any dispute not finally resolved by a small claims court. The arbitration will be conducted by one arbitrator using the procedures described by this Section 7. If any portion of this Dispute Resolution Section is determined to be unenforceable, then the remainder shall be given full force and effect.

The arbitration of any dispute involving $10,000 or less shall be conducted in accordance with the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), as modified by this Agreement, which are in effect on the date a dispute is submitted to the AAA. The AAA's Commercial Arbitration Rules and fee schedules will apply to any disputes in excess of $10,000. You have the right to be represented by counsel in an arbitration. In conducting the arbitration and making any award, the arbitrator shall be bound by and strictly enforce the terms of this Agreement and may not limit, expand or otherwise modify its terms.

NO DISPUTE MAY BE JOINED WITH ANOTHER LAWSUIT, OR IN AN ARBITRATION WITH A DISPUTE OF ANY OTHER PERSON, OR RESOLVED ON A CLASS-WIDE BASIS. THE ARBITRATOR MAY NOT AWARD DAMAGES THAT ARE NOT EXPRESSLY AUTHORIZED BY THIS AGREEMENT AND MAY NOT AWARD PUNITIVE DAMAGES OR ATTORNEYS' FEES UNLESS SUCH DAMAGES ARE EXPRESSLY AUTHORIZED BY A STATUTE. YOU AND AT&T BOTH WAIVE ANY CLAIMS FOR AN AWARD OF DAMAGES THAT ARE EXCLUDED UNDER THIS AGREEMENT.

**b. Arbitration Information and Filing Procedures.** Before you take a dispute to arbitration or to small claims court, you must first contact our customer account representatives at the customer service number on your AT&T bill for the Services, or write to us at AT&T, P.O. Box 9440TB, Maitland, Florida 32794-4078, and give us an opportunity to resolve the dispute. Similarly, before AT&T takes a dispute to arbitration,